## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | CIVIL ACTION NO. 3:18-CV-00094 |
| Plaintiff, | |
| v. | (MANNION, J.) |
| | (MEHALCHICK, M.J.) |
| BOBRICK WASHROOM EQUIPMENT, INC., | |
| Defendant. | |

## MEMORANDUM

This matter has been referred to the undersigned for purposes of resolving the parties' discovery dispute regarding the production of certain documents. (Doc. 94). Plaintiff Travelers Property Casualty Company of America ("Travelers") has filed a Motion to Compel, asking the Court to compel Defendant Bobrick Washroom Equipment, Inc. ("Bobrick") to provide substantive responses to Travelers' Interrogatories, Requests for Production of Documents, and Requests for Admissions. (Doc. 100). Travelers also moves the Court to dismiss Bobrick's objections to its subpoena of records issued to third-party witness Scranton Products, Inc. ("SP"). (Doc. 100). Bobrick opposes Travelers' Motion on grounds that Travelers fails to carry its burden to show that the requested material is relevant and discoverable. (Doc. 109, at 21-25). Additionally, Bobrick opposes the Motion for Requests for Admission and interrogatories due to prematurity and other issues as to the form of the requests. (Doc. 109, at 29-37). Finally, Bobrick asserts that an applicable Protective Order, as well as the Federal Rules of Evidence, prohibit Travelers from receiving what it demands. (Doc. 109, at 38-49). Third-party witness SP opposes Travelers' Motion insofar as

it is directed towards SP on grounds that it should not be compelled to produce the discovery available from a party. (Doc. 110, at 1-2). Both sides have fully briefed this Motion. (Doc. 101; Doc. 109; Doc. 110; Doc. 114). The parties appeared before the Court on April 1, 2021, for Oral Argument. (Doc. 133). At that time, Travelers suggested that to simplify the process it would proceed with fewer issues "with the explicit understanding that in doing so Travelers is not waiving any rights [b]ut preserving rights to perhaps at a later date argue every one of Bobrick's purported objections to every discovery request which are contained in the motion to compel." (Doc. 133, at 7). Travelers stated that "it would be appropriate at this point to prioritize, simply prioritize, the issue before the Court and deal with that issue now and if the Court rules in Travelers favor then proceed with that type of discovery." (Doc. 133, at 7). As such, the Court now rules upon Travelers' Motion to Compel as to document requests seven and eleven, as to interrogatories one, four, and eight, and as to the subpoena addressed to SP. (Doc. 100; Doc. 100-16; Doc. 100-19); (*see* Doc. 133, at 8).

## I.    BACKGROUND

This matter concerns the allocation of the proceeds of a settlement agreement entered into between Bobrick and SP, with Travelers claiming that it is entitled to a portion of the proceeds. (Doc. 100-1, at 4; Doc. 109, at 9). SP sued Bobrick on May 2, 2014, claiming false advertising under the Lanham Act,[1] deceptive and misleading advertising under the Lanham Act, common-law unfair competition, commercial disparagement, and tortious interference with existing or prospective business relations. (Doc. 100, at 3; Doc. 109, at 11; Doc. 109-2, at 10). As Bobrick's insurer, Travelers agreed to provide for Bobrick's defense through

---

[1] 15 U.S.C. § 1125(a).

independent counsel and allegedly paid $7,388,017.19 in attorney's fees and costs for this defense. (Doc. 100, at 3). Bobrick adds that despite participating in the defense of the claim, Travelers reserved all rights under its policies including the right to decline coverage. (Doc. 109, at 12; Doc. 109-2, at 57). Citing Pennsylvania law, Travelers refused to relinquish control over the selection of counsel. (Doc. 109, at 12; Doc. 109-2, at 73-74). An arbitrator in the case later determined that Travelers' reservation of rights created a conflict of interest which entitled Bobrick to select independent counsel. (Doc. 109, at 12; Doc. 109-2, at 73-74). When Bobrick demanded arbitration in May 2015, Travelers agreed to allow independent counsel. (Doc. 109, at 12; Doc. 109-2, at 76). Bobrick asserts that the costs it incurred in defending SP's claims were much higher than the reimbursement it received from Travelers. (Doc. 109, at 13).

On November 10, 2016, Bobrick moved to amend its Answer to assert counterclaims against SP, alleging that SP falsely marketed its toilet partition products and had sued Bobrick for anticompetitive purposes. (Doc. 100, at 3; Doc. 109, at 14; Doc. 109-2, at 27). On December 9, 2016, after Bobrick asserted these counterclaims, SP moved to voluntarily dismiss its claims against Bobrick with prejudice. (Doc. 100, at 4; Doc. 109, at 13; Doc. 109-2, at 29). The Court then granted Bobrick's motion to add counterclaims to its answer on December 16, 2016, and granted SP's motion to voluntarily dismiss its claims against Bobrick on February 10, 2017. (Doc. 109-2, at 29, 32). The Court allowed Bobrick to pursue claims for attorney's fees under the Lanham Act as a prevailing party after the voluntary dismissal. (Doc. 100, at 4; Doc. 109, at 14-15).

Bobrick and SP proceeded to engage in negotiations which resulted in a settlement agreement which was filed with the Court on September 8, 2017. (Doc. 100, at 5; Doc. 109,

3

at 16-17). This settlement agreement was negotiated by Bobrick without Travelers' knowledge or consent. (Doc. 100, at 5; Doc. 109, at 16-17). Pursuant to the settlement agreement, SP paid Bobrick approximately $7.5 million in exchange for Bobrick releasing its counterclaims against SP, including its request for attorney's fees. (Doc. 100, at 5; Doc. 109, at 9). The settlement agreement was approved by the Court on March 6, 2018. (Doc. 109, at 17; Doc. 109-2, at 44). Bobrick adds that minimal discovery occurred in the matter after SP withdrew its claims against Bobrick and Bobrick asserted its amended counterclaim against SP. (Doc. 109, at 17). "[W]hen the [u]nderlying [l]itigation settled, fact discovery on Bobrick's counterclaim and potential fee-shifting motion had barely commenced and expert discovery had never begun." (Doc. 109, at 19).

After Bobrick and SP settled, Travelers demanded that Bobrick reimburse Travelers for all defense costs it received from the settlement amount.[2] (Doc. 100, at 5). Bobrick has rejected this demand. (Doc. 100, at 5). Bobrick states that Travelers had paid less than half of the defense costs Bobrick had incurred in defending itself against SP's original claims. (Doc. 109, at 19). Due to the dispute over defense fees, Bobrick demanded that it and Travelers go to arbitration which gave rise to a ruling that all of the hourly rates paid by Bobrick to independent counsel were reasonable and that these rates should have been paid by Travelers.

---

[2] The insurance contract between Bobrick and Travelers states:

**8. Transfer of Rights of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

(Doc. 100, at 5).

4

(Doc. 109, at 19; Doc. 109-2, at 81). On September 20, 2017, the arbitrator ruled that if the amount of hours billed was reasonable, Travelers would owe Bobrick $4,181,681.05 – the difference between the amount Travelers should have paid Bobrick and the amount it actually paid. (Doc. 109, at 20; Doc. 109-2, at 81-83). Travelers paid the majority of the money owed to Bobrick after Bobrick had already reached its settlement agreement with SP subject to the Court's approval and agreement to retain jurisdiction over the settlement. (Doc. 109, at 20; Doc. 109-2, at 42, 81-83).

In attempting to recover defense costs from Bobrick, Travelers commenced this case in the United States District Court for the Central District of California and also filed a Motion to Intervene and to Order Interpleader in the underlying action between SP and Bobrick. (Doc. 100, at 6; Doc. 109, at 20-21; Doc. 109-2, at 43). On January 11, 2018, this case was transferred from the United States District Court for the Central District of California to this Court. (Doc. 26). On March 6, 2018, the Court denied Travelers' Motion to Intervene in the underlying action between Bobrick and SP. (Doc. 100, at 6; Doc. 109, at 21).

On July 17, 2018, Travelers served Interrogatories, Requests for Production of Documents, and Requests for Admissions on Bobrick. (Doc. 100, at 8; Doc. 109, at 23). Bobrick objected to these Interrogatories and Requests. (Doc. 100, at 8; Doc. 109, at 24). Furthermore, SP informed Bobrick that it expected Bobrick to abide by the Protective Order implemented in the underlying litigation between it and Bobrick, forbidding Bobrick from producing any SP material designated as Confidential or Attorneys' Eyes Only ("AEO"). (Doc. 109, at 24; Doc. 109-2, at 194-95). Bobrick states that it did produce its own documents which were not designated AEO or Confidential. (Doc. 109, at 24).

5

On November 13, 2018, Travelers issued a subpoena of records to SP seeking information related to Bobrick's recovery and "the nature and scope of damages that Bobrick claimed were owed by [SP] in the counterclaims Bobrick asserted" against SP. (Doc. 100, at 6; Doc. 100-5). Bobrick submits that this subpoena included demands for documents which were identical to those demands already requested from Bobrick. (Doc. 109, at 25). Pursuant to a negotiated agreement between Travelers and SP, SP was permitted to produce documents designated "Confidential" in the underlying action between SP and Bobrick but no documents designated "AEO." (Doc. 100, at 6-7; Doc. 100-7). This agreement, however, was conditioned on Bobrick's concurrence, which Bobrick refused to provide. (Doc. 100, at 6-7; Doc. 100-8; Doc. 109, at 25). On November 27, 2018, SP refused to provide documents in response to Travelers' subpoena. (Doc. 100, at 7; Doc. 100-9; Doc. 109). On December 3, 2018, Bobrick provided its objections to Travelers' subpoena to SP. (Doc. 100, at 7; Doc. 100-10; Doc. 109, at 25).

On November 14, 2018, Travelers asked the Court to compel Bobrick to respond to its Document Requests and Interrogatories. (Doc. 57). The action was subsequently transferred to another judge in this Court who was apprised of the pending Motion to Compel on May 15, 2020. (Doc. 89). On June 18, 2020, Bobrick filed motions in the action between it and SP, seeking to enforce the protective order in the underlying litigation, as well as a motion seeking modification or clarification of the decision and order filed on February 28, 2020. (Doc. 109, at 27; Doc. 109-2, at 49). The Court declined to extend the protective order from the Bobrick/SP litigation to the action filed by Travelers. (Doc. 109, at 27). Travelers filed the instant Motion on November 23, 2020. (Doc. 100).

II.  **Discovery Standard**

The general scope of discovery is outlined by Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Issues relating to the scope of discovery permitted under Rule 26 rest in the sound discretion of the court. *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987). Thus, a Court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. *Marroquin–Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983).

Rule 26 establishes a liberal discovery policy. *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 226-27 (M.D. Pa. 2014); *Great West Life Assurance Co. v. Levithan*, 152 F.R.D. 494, 497 (E.D. Pa. 1994). Discovery is generally permitted of any items that are relevant or may lead to the discovery of relevant information. *Hicks v. Big Brothers/Big Sisters of Am.*, 168 F.R.D. 528, 529 (E.D. Pa. 1996); *Stabilus v. Haynsworth, Baldwin, Johnson, & Greaves, P.A.*, 144 F.R.D. 258, 265–66 (E.D. Pa. 1992) (explaining that when there is no doubt about relevance a court should tend toward permitting discovery). Moreover, discovery need not be confined to items of admissible evidence but may encompass that which appears reasonably calculated to lead to the discovery of admissible evidence. *Callahan v. A.E.V., Inc.*, 947 F. Supp. 175, 177 (W.D. Pa. 1996); *Momah v. Albert Einstein Medical Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996).

7

Although "the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits." *Stabilus*, 144 F.R.D. at 265. The Court will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relating to confidential or privileged information. *S.S. Fretz, Jr., Inc. v. White Consol. Indus., Inc.*, No. 90–1731, 1991 WL 21655, at *2 (E.D. Pa. Feb. 15, 1991).

It is well-established that "[t]he party opposing discovery has the burden to raise an objection, then the party seeking discovery must demonstrate the relevancy of the requested information." *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 101 (E.D. Pa. 2010) (quoting *Corrigan v. Methodist Hosp.*, 158 F.R.D. 54, 57 (E.D.Pa.1994)). "Once this showing is made, the burden switches again to the party opposing discovery to show why discovery should not be permitted." *Romero*, 271 F.R.D. at 101.

## III.   THE SETTLEMENT NEGOTIATIONS ARE NOT PROTECTED BY RULE 408.

Bobrick asserts that Federal Rule of Evidence 408 precludes Travelers from accessing the settlement communications between Bobrick and SP. (Doc. 109, at 45-53). According to Bobrick, "Travelers is, in fact, trying to obtain the same discovery for the very purpose FRE 408 forbids, to 'prove or disprove the validity or amount of a disputed claim' – here the validity and amount of its claim against Bobrick." (Doc. 109, at 51). Travelers is attempting to apportion the settlement proceeds paid to Bobrick by SP so that it can collect any attorneys' fees it paid as Bobrick's insurer. (Doc. 109, at 51). As such, per Bobrick, the settlement communications would be used by Travelers to prove the validity and amount of its claim against Bobrick. (Doc. 109, at 51). Conversely, Travelers submits that Rule 408 limits the admissibility and not the discoverability of settlement offers. (Doc. 100-1, at 12). Travelers

also asserts that it does not intend to use the evidence to prove or disprove the validity or amount of a disputed claim. (Doc. 100-1, at 12).

Evidence of settlement negotiations may not be offered to prove or disprove the validity or amount of a disputed claim. Fed. R. Evid. 408(a). When the purpose of the statements "is really an issue that bears ultimately on an element of liability, then the rule of exclusion will apply." Stephen A. Saltzburg, et al., *Federal Rules of Evidence Manual*, § 408.02[3](2) (11th ed. 2015). "However, statements made during settlement negotiations are admissible 'when offered for another purpose,' Fed. R. Evid. 408(b), such as to establish 'an independent violation (here, retaliation) unrelated to the underlying claim which was the subject of the correspondence.'" *Spence v. Foxx*, 159 F. Supp. 3d 483, 501 n.9 (D.N.J. 2014) (quoting *Carney v. Am. Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998)). Writing for the United States Court of Appeals for the Seventh Circuit, Judge Posner explained:

> Rule 408 excludes evidence of compromises and offers to compromise, and of "statements made in compromise negotiations." Although this language is broad enough to cover Haack's testimony, the purpose of the rule must be considered. It is to encourage settlements. The fear is that settlement negotiations will be inhibited if the parties know that their statements may later be used as admissions of liability. But Haack's testimony was not offered for the purpose of demonstrating that Central Soya was or was not liable to Aquarium Farms for breach of its contract to supply a complete catfish feed. The purpose was to demonstrate what the terms of the settlement of Aquarium Farms' claim were. "Where the settlement negotiations and terms explain and are a part of another dispute they must often be admitted if the trier is to understand the case." 2 Weinstein & Berger, Weinstein's Evidence P 408(5), at 27 (1981).

> *Central Soya Co. Inc. v. Epstein Fisheries, Inc.*, 676 F.2d 939, 944 (7th Cir. 1982).

In a prior case which also involved a lawsuit arising out of a separate matter which had been resolved by a settlement agreement, the United States District Court for the Eastern District of Pennsylvania held that the settlement agreement in the separate matter was

9

admissible to establish the circumstances of the settlement. *B & B Inv. Club v. Kleinert's, Inc.*, 472 F.Supp. 787, 791 (E.D. Pa. 1979). In *B & B Inv. Club*, a class of plaintiffs sued a diversified manufacturer (Kleinert's), as well as two accounting firms, an investment banking firm, and eleven individuals for making "material misrepresentations to the investing public concerning the financial condition and prospects of Kleinert's business and operations." *B & B Inv. Club*, 472 F.Supp. at 789. One of the individual defendants (Brubaker) was the treasurer at Kleinert's during the period at issue. *B & B Inv. Club*, 472 F.Supp. at 789.

Brubaker filed a cross-claim against Kleinert's alleging he was entitled to indemnification for the expenses he incurred in defending the action and for his share of any settlement. *B & B Inv. Club*, 472 F.Supp. at 788-89. Kleinert's filed a countercross-claim against Brubaker to collect for any liability potentially incurred by Kleinert's. *B & B Inv. Club*, 472 F.Supp. at 789. These cross-claims were subsequently severed from the main action and it was agreed that they would be tried without a jury after the main claims were resolved. *B & B Inv. Club*, 472 F.Supp. at 789.

Brubaker negotiated with the plaintiffs which resulted in them dismissing all claims against him with prejudice. *B & B Inv. Club*, 472 F.Supp. at 789. As part of this agreement, Brubaker was not obligated to make any monetary payment. *B & B Inv. Club*, 472 F.Supp. at 789. Plaintiffs' claims against Kleinert's were also settled. *B & B Inv. Club*, 472 F.Supp. at 789.

Brubaker subsequently attempted to collect from Kleinert's under the Pennsylvania Business Corporation Code, which provides "that an officer 'shall be indemnified against reasonable expenses and attorneys' fees to the extent he 'has been successful on the merits or otherwise' in a proceeding where his actions as an officer allegedly violated the law." *B & B Inv. Club*, 472 F.Supp. at 789-90 (quoting Pennsylvania Business Corporation Code, 15 Pa.

Stat. Const. § 410 C). Brubaker argued that he met the statutory test of "success on the merits or otherwise" because he negotiated a dismissal with prejudice without making any monetary payments to the plaintiff class. *B & B Inv. Club*, 472 F.Supp. at 790. As such, he averred that he was entitled to indemnification from Kleinert's. *B & B Inv. Club*, 472 F.Supp. at 790.

Kleinert's asserted that Brubaker was not "successful on the merits or otherwise" because the settlement did not vindicate him. *B & B Inv. Club*, 472 F.Supp. at 790. In support of its position, Kleinert's filed the affidavit of an attorney for the plaintiff class "for the purported purpose of establishing that Brubaker was not 'successful.'" *B & B Inv. Club*, 472 F.Supp. at 791. Brubaker objected to the use of this affidavit, asserting that it was precluded by Rule 408 because it was related to compromise negotiations. *B & B Inv. Club*, 472 F.Supp. at 791. The court allowed the use of the affidavit, concluding that the compromise negotiations were being offered for "another purpose," so were not covered by Rule 408. *B & B Inv. Club*, 472 F.Supp. at 791.

Bobrick cites *Ciolli v. Irvani*, 625 F. Supp. 2d 276, 287 (E.D. Pa. 2009) in support of its position that the settlement agreement should be covered by Rule 408. (Doc. 109, at 53). The purpose of Rule 408, however, is more applicable in *Ciolli* than to the case at hand. In *Ciolli*, there also was underlying litigation from which the case arose. *Ciolli*, 625 F. Supp. 2d 276, 281-82 (E.D. Pa. 2009). The underlying lawsuit was filed by a two female students at Yale Law School who had been included on an internet discussion board and "a website designed to rate the attractiveness of women from the top fourteen law schools in the country." *Ciolli*, 625 F. Supp. 2d at 282. The students sued 29 pseudonymous individuals for comments they had made in posts to the website and discussion board. *Ciolli*, 625 F. Supp. 2d at 282. One of the individual defendants in the underlying litigation, Ciolli, was dismissed and subsequently

brought suit against the two female students for wrongful initiation of civil proceedings, abuse of process, libel, slander, and other claims. *Ciolli*, 625 F. Supp. 2d at 282.

In his complaint, Ciolli discussed three sets of settlement communications that had taken place in the underlying litigation. *Ciolli*, 625 F. Supp. 2d at 284. The communications allegedly involved conversations about how Ciolli should not have been part of the lawsuit, that the plaintiffs would dismiss Ciolli from the suit in exchange for certain concessions, and that it was admitted that Ciolli had been sued in error. *Ciolli*, 625 F. Supp. 2d at 284-85. The defendants sought to strike evidence of these settlement discussions, asserting that they were inadmissible under Rule 408. *Ciolli*, 625 F. Supp. 2d at 285.

The court in *Ciolli* looked to the purpose of Rule 408 in determining whether evidence of the settlement discussions from the underlying litigation should be struck despite the "action raising a claim different from the one that was the subject of the negotiations." *Ciolli*, 625 F. Supp. 2d at 287. The court determined that

> Ciolli's wrongful initiation of civil proceedings and abuse of process claims are sufficiently related to the [underlying litigation] as to require the inadmissibility of settlement evidence from that suit. Part of an effective settlement process is a frank discussion of the relative merits of each party's case. If parties were permitted to take the content of these negotiations and use them in subsequent litigation for wrongful initiation of civil proceedings or abuse of process, then counsel would put themselves and their clients at risk of suit in every settlement conference in which they participate, resulting in either less effective or even non-existent negotiations. This is precisely the situation that FRE 408 is designed to avoid.

*Ciolli*, 625 F. Supp. 2d at 287-88.

The court went on to explain that the settlement communications are actually being "offered as proof of liability for, invalidity of, or amount of the negotiated claims" because "Ciolli's claims for wrongful initiation of civil proceedings and abuse of process are essentially causes

12

of action asserting the invalidity of the claims in the [underlying litigation]." *Ciolli*, 625 F. Supp. 2d at 288. Ciolli's claim in the instant case was bolstered by the invalidity of the negotiated claim. *Ciolli*, 625 F. Supp. 2d at 288.

Here, Travelers' use of the settlement agreement between Bobrick and SP is more similar to *B & B Inv. Club* than *Ciolli*. Rule 408 serves to give parties the security to communicate openly about their conduct and ensuing consequences without those communications being used against them. *See Central Soya Co. Inc.,* 676 F.2d at 944. In *Ciolli*, the settlement negotiations were to be used to demonstrate the conduct of the parties as discussed in those negotiations. *See Ciolli*, 625 F. Supp. 2d at 284-85. Travelers does not intend to use the settlement agreement to establish that Bobrick or SP deceptively advertised or committed other conduct that could have been disclosed in settlement negotiations. Rather, Travelers' purpose of using the settlement agreement, as stated by Bobrick, is to determine whether the parties apportioned proceeds to attorneys' fees. (Doc. 109, at 51). As in *B & B Inv. Club*, Travelers' purpose in using the settlement agreement is not to determine the underlying conduct of the settling parties, but rather to determine the terms of the parties' agreement. *See B & B Inv. Club*, 472 F.Supp. at 791 (allowing a third party to use settlement communications to establish that a party was not 'successful' in the litigation so as to avoid indemnifying that party).

It is unclear how a chilling effect could occur by allowing settlement discussions to be subsequently examined to determine whether and how funds were apportioned. *See Central Soya Co. Inc.,* 676 F.2d at 944. As in *Central Soya Co. Inc.,* the terms of the agreement rather than the conduct of the parties is at issue. *See Central Soya Co. Inc.,* 676 F.2d at 944. These

13

precedents establish that the settlement agreement between Bobrick and SP is not covered by Rule 408 if used for the purpose of showing whether proceeds were apportioned.[3]

Bobrick's remaining objections to Document Request 11 are overruled in part and sustained in part. (Doc. 100-19, at 20-21). The information sought is relevant because it has a tendency to make a consequential fact more or less probable. *See In re Schaefer,* 331 F.R.D. 603, 607 (W.D. Pa. 2019). Bobrick has not established that the request is overly broad, unduly burdensome, vague, ambiguous, or confusing. A party's representative is any individual representing Bobrick or SP at the time the communication was made. Bobrick's objections are sustained to the extent that the request seeks protected attorney work product or documents protected by the attorney-client privilege.

## IV.   Bobrick is responsible for producing any documents bearing no AEO designation.

In the underlying litigation between Bobrick and SP, a protective order was implemented on March 26, 2015, which limited the production of material designated as Confidential or AEO. (Doc. 109-2, at 16). Bobrick contends that "Travelers' overbroad demands would require Bobrick and SP to violate the Protective Order in the Underlying Litigation, which remains in full force and effect." (Doc. 109, at 53). Bobrick submits that if materials from the underlying litigation are ordered to be produced, that SP should be responsible for producing its own discovery documents and responses. (Doc. 109, at 53). SP's document designations have been inconsistent and confusing, so Bobrick should not bear the

---

[3] The contours of Rule 408 still apply notwithstanding Travelers' status as a nonparty to the settlement agreement between Bobrick and SP. *See Baptiste v. Rohn*, No. 2013-0104, 2016 WL 1273887 (D.V.I. Mar. 29, 2016) (citing *Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1069 (5th Cir. 1986)).

risk of inadvertent production of documents that should not be produced. (Doc. 109, at 53-54).

SP contends that it should not be forced to produce any materials because production should not be compelled by a non-party when the discovery is available from a party, such as Bobrick. (Doc. 110, at 6). SP states that Bobrick is in possession of any documents designated "Confidential" and that the protective order in the underlying litigation allows for Bobrick to produce them. (Doc. 110, at 7-8). Bobrick needs only to withhold documents which are stamped AEO by SP; its only obligation is to follow SP's designations, according to SP. (Doc. 110, at 8 n.1). SP asserts that at the very least, the motion to compel as to SP should not be ruled upon until Bobrick has produced all documents ordered to be produced. (Doc. 110, at 10).

Travelers' position is that the protective order in the underlying litigation does not preclude SP and Bobrick from producing documents to Travelers. (Doc. 100-1, at 11). Scranton and Travelers have stipulated to producing documents previously marked "Confidential," as long as they retain such treatment under the protective order filed with the Court on June 11, 2018. (Doc. 100-1, at 11; Doc. 50, at 4-16). Travelers cites an order from the underlying litigation in support of its averment that production of the material, if "relevant and subject to disclosure in another case," would not violate the terms of the stipulated protective order. (Doc. 100-1, at 11-12).

The protective order which Bobrick submits would be violated if it were forced to produce the requested documents is Doc. 60 in the underlying litigation. (Doc. 109, at 27; Doc. 109-2, at 16). "'[I]t may readily be agreed that discovery in one lawsuit that is subject to a protective order may not necessarily, or even often, preclude discovery in a subsequent

15

lawsuit (with or without a protective order issued by the new court).'" *In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 699 (3d Cir. 2018) (quoting *Four Pillars Enters. Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002)). Indeed, the protective order at issue states, "By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case." *Bobrick Washroom Equipment, Inc. v. Scranton Products, Inc.*, No. 3:14-CV-00853 (M.D. Pa. Mar. 26, 2015), ECF No. 60. In *Four Pillars*, two adhesive tape companies accused each other of stealing and misappropriating trade secrets. *Four Pillars Enters. Co., Ltd.*, 308 F.3d at 1076-77. In one of the cases, where Avery Dennison sued Four Pillars for theft of trade secrets and violations of RICO, the parties agreed to a protective order which stated that "confidential material produced by Avery Dennison could be used by Four Pillars only in the civil suit or the criminal proceeding in the Northern District of Ohio, and that Four Pillars could not remove any of the material from the United States." *Four Pillars Enters. Co., Ltd.*, 308 F.3d at 1077. The District Court for the Northern District of Ohio entered this protective order. *Four Pillars Enters. Co., Ltd.*, 308 F.3d at 1077.

After that suit had ended, Four Pillars filed a motion in the District Court for the Central District of California to compel Avery Dennison to produce certain documents to be used in Four Pillars' suits against Avery Dennison. *Four Pillars Enters. Co., Ltd.*, 308 F.3d at 1077. This request was denied by the district court on grounds that the documents produced in the Ohio civil litigation were subject to that court's protective order. *Four Pillars Enters. Co., Ltd.*, 308 F.3d at 1077. "In deference to that order, and in the exercise of his discretion, the magistrate judge denied the request." *Four Pillars Enters. Co., Ltd.*, 308 F.3d at 1077.

16

Thereafter, Four Pillars moved the District Court for the Northern District of Ohio to modify the protective order. *Four Pillars Enters. Co., Ltd.*, 308 F.3d at 1077. This motion was denied, with the court reasoning that "Four Pillars' proven misconduct and Avery Dennison's interest in maintaining the confidentiality of the documents out-weighed Four Pillars' interest in using the documents in the foreign lawsuits." *Four Pillars Enters. Co., Ltd.*, 308 F.3d at 1077.

The United States Court of Appeals for the Ninth Circuit found that "[b]ecause the documents and deposition testimony were produced in the Ohio litigation, and concern confidential material, there is little question that they were subject to that court's protective order." *Four Pillars Enters. Co., Ltd.*, 308 F.3d at 1078. Four Pillars asserted that, even so, the court's protective order should have no effect outside of the litigation for which it was entered. *Four Pillars Enters. Co., Ltd.*, 308 F.3d at 1078. To this, the Ninth Circuit explained that though "discovery in one lawsuit that is subject to a protective order may not necessarily, or even often, preclude discovery in a subsequent lawsuit," it was up to the district court's broad discretion to allow or disallow the requested material. *Four Pillars Enters. Co., Ltd.*, 308 F.3d at 1078-79. Given the purpose of the Ohio protective order – "to prevent misuse of the confidential material" – it was not an abuse of discretion to deny "Four Pillars' requests on the ground that they would frustrate or violate the Ohio protective order." *Four Pillars Enters. Co., Ltd.*, 308 F.3d at 1079.

The purpose of the protective order in the underlying litigation between Bobrick and SP was also to prevent misuse of confidential material. The parties exchanged information which was "comprised of technical, financial, customer, or other commercial information," which was not publicly known, and which was maintained in confidence. *Bobrick Washroom Equipment, Inc. v. Scranton Products, Inc.*, No. 3:14-CV-00853 (M.D. Pa. Mar. 26, 2015), ECF

17

No. 60. Trade secrets and other technical information was also exchanged. *Bobrick Washroom Equipment, Inc. v. Scranton Products, Inc.*, No. 3:14-CV-00853 (M.D. Pa. Mar. 26, 2015), ECF No. 60. Understandably, the parties sought to prevent this information from reaching the public's eye. *Bobrick Washroom Equipment, Inc. v. Scranton Products, Inc.*, No. 3:14-CV-00853 (M.D. Pa. Mar. 26, 2015), ECF No. 60.

Now, the Court must balance the confidentiality and sensitivity concerns expressed by Bobrick and SP with the convenience and efficiency that would be gained by using documents that have already been produced in previous litigation. Bobrick's concerns are outweighed by the benefits of compelling production. Bobrick contends that its "good-faith concern about producing SP's documents is rooted in SP's history of failing to accurately and timely designate AEO and Confidential documents in the Underlying Litigation." (Doc. 109, at 54). These concerns, however, should be minimal at this point. The documents sought by Travelers are already labeled and in Bobrick's possession, so any timeliness issues regarding designation should not exist. (Doc. 109, at 54). The black and white nature of the document designations should prevent any confusion over what Bobrick can and cannot produce. Material either contains an AEO label, or it does not. Travelers' submits that it is not requesting documents designated "Attorneys' Eyes Only," or AEO, and SP does not object to Bobrick producing SP's documents which were designated Confidential in the underlying litigation as long as they are protected as such. (Doc. 100-1, at 8-9; Doc. 110, at 8). Bobrick takes issue with the criteria used by SP in designating documents and submits that "it would be impossible for Bobrick to predict what information SP believes will cause it real harm if disclosed to Travelers." (Doc. 109, at 55). However, at this point Bobrick has no reason to pull back the reasoning behind the document designations. SP has agreed to allow documents

18

not labeled AEO to be produced, and Travelers is requesting nothing more. As such, the Court will order Bobrick to produce all material responsive to Travelers' Document Request 7 not marked AEO or Attorneys' Eyes Only, and the documents are to be treated in accordance with the protective order entered into by the parties in this matter. (Doc. 50).

Given Bobrick's concerns regarding only portions of documents, interrogatory responses, and deposition testimony being labeled AEO, and the confusion that could cause, material which bears AEO designation in part need not be produced by Bobrick at all. (Doc. 109, at 55). Bobrick's remaining objections to Document Request 7 are overruled. (Doc. 100-19, at 20-21). The information sought is relevant because it has a tendency to make a consequential fact more or less probable. *See In re Schaefer,* 331 F.R.D. at 607.

Travelers' subpoena of SP's records is quashed without prejudice to Travelers renewing the subpoena after Travelers has received production from Bobrick. (Doc. 100-5).

## V.   BOBRICK OBJECTIONS TO INTERROGATORIES ARE SUSTAINED.

The interrogatories at issue are numbers one, four, and eight. (Doc. 133, at 8). Interrogatory number one asks Bobrick to "state the amount which you contend is attributable to all sums sought in the counterclaim asserted by Bobrick against [SP]." (Doc. 100-16, at 4-5). The answer to this interrogatory may be provided through the production of settlement negotiations between Bobrick and SP in response to Document Request 11. As such, Bobrick's objections to this interrogatory are sustained without prejudice to the interrogatory's renewal after production is provided in response to Document Request 11.

Interrogatory number four asks Bobrick to provide "each portion of the $7.5 million settlement payment which you received from [SP] in the settlement of the Underlying Action which is attributable to a sum which you reasonably expected to receive as an award of

19

attorneys' fees, costs, and expenses for your successful defense of the Underlying Action." (Doc. 100-16, at 11). The answer to this interrogatory may also be provided through the production of settlement negotiations between Bobrick and SP in response to Document Request 11. As such, Bobrick's objections to this interrogatory are sustained without prejudice to the interrogatory's renewal after production is provided in response to Document Request 11.

Finally, interrogatory number eight asks for "all amounts you contend that you were entitled to recover against [SP] in the Underlying Action." (Doc. 100-16, at 17). The answer to this interrogatory may also be provided through the production of settlement negotiations between Bobrick and SP in response to Document Request 11. As such, Bobrick's objections to this interrogatory are sustained without prejudice to the interrogatory's renewal after production is provided in response to Document Request 11.

## VI.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Bobrick is to provide Travelers with materials from the underlying litigation which are not labeled "Attorneys' Eyes Only," or "AEO." Additionally, the settlement negotiations between Bobrick and SP are not precluded under Rule 408 of the Federal Rules of Evidence as long as they are used for the purpose of determining whether and how funds were apportioned. Travelers' subpoena of SP records is quashed without prejudice to renewal. Bobrick's objections to Travelers' interrogatories are sustained without prejudice to Travelers renewing the interrogatories after production is provided in response to Document Request 11.

In light of Travelers' suggestion to the Court at oral argument to prioritize only part of its Motion to Compel, the Court requests Travelers to advise the Court as to whether it wishes

to withdraw the remaining portions of its motion, without prejudice, in light of this Order, or whether it wishes the Court to address the remainder of its motion. (Doc. 100; Doc. 133, at 7-8). Travelers should make this request by email to the undersigned on or before close of business on Friday, April 16, 2021.

An appropriate Order follows.

Dated: April 13, 2021

s/ Karoline Mehalchick

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

21