UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>                     Plaintiff,<br><br>   v.<br><br>BOBRICK WASHROOM EQUIPMENT, INC.,<br><br>                     Defendant. | CIVIL ACTION NO. 3:18-CV-00094<br><br>(MANNION, J.)<br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

Currently pending before the Court are two motions by Defendant Bobrick Washroom Equipment, Inc. ("Bobrick"), to strike information about confidential arbitration testimony (Doc. 144; Doc. 158), and a motion by Plaintiff Travelers Property Casualty Company of America ("Travelers") for an order finding that Travelers may use prior arbitration testimony of counsel for Bobrick, Carl W. Hittinger ("Hittinger"). (Doc. 147). This matter has been referred to the undersigned for purposes of resolving the parties' discovery dispute regarding the production of certain documents. (Doc. 94). For the following reasons, Bobrick's motions to strike shall be granted (Doc. 144; Doc. 158), and Travelers' motion for an order finding that it can use the prior arbitration testimony shall be denied. (Doc. 147).

I. **BACKGROUND AND PROCEDURAL HISTORY**

This matter concerns the allocation of the proceeds of a settlement agreement entered between Bobrick and Scranton Products in an underlying action, with Travelers claiming that it is entitled to a portion of the proceeds for its defense in the now settled underlying action, *Bobrick Washroom Equip., Inc., v. Scranton Products, Inc.*, No. 3:14-CV-00853, 2017 WL 2126320 (M.D. Pa. May 16, 2017) (the "Underlying Action"). (Doc. 151, at 2).

As Bobrick's insurer, Travelers provided for Bobrick's legal defense through independent counsel. (Doc. 146, at 5). In the Underlying Action, Bobrick filed two counterclaims against Scranton Products seeking its counsel fees, which Bobrick settled and Scranton Products agreed to pay $7.5 million. (Doc. 146, at 5). Once the Underlying Action was settled, Travelers demanded that Bobrick reimburse Travelers for all defense costs it received from the settlement amount. (Doc. 146, at 5). Bobrick rejected this demand. (Doc. 146, at 5). Due to the dispute over defense fee recovery, Bobrick invoked California Civil Code section 2860, which mandates arbitration of attorneys fee disputes involving insurance. (Doc. 151, at 8). Before the arbitration, Bobrick requested highly sensitive and confidential information regarding hourly rates by Travelers to other attorneys. (Doc. 151, at 8).

On December 7, 2015, Bobrick and Travelers entered into a Confidentiality Agreement, which provided that a party producing confidential documents could designate them as such "by stamping the word 'Confidential – Subject to Confidentiality Agreement' or substantially similar language, on each page that contains protected material." (Doc. 145-1, at 3). After signing the Confidentiality Agreement, Travelers provided Bobrick with documents that were marked to reflect their "Protected Material" status. (Doc. 151, at 10). On February 8, 2016, Bobrick and Travelers entered an Agreement to Arbitrate. (Doc. 156-

On August 22, 2017, in accordance with California law and before a Judicial Arbitration and Mediation Services ("JAMS") arbitrator, Travelers and Bobrick arbitrated the dispute over the hourly billing rates Travelers was obligated to pay counsel for Bobrick in the Underlying Action between Bobrick and Scranton Products, Inc. (Doc. 152-10, at 3). During the arbitration, counsel for Bobrick, Hittinger, was called to offer testimony regarding the Underlying Action and his role in it. (Doc. 151, at 10). His testimony included his opinion on whether Bobrick's then-pending attorney fee claim against Scranton Products was likely to

succeed. (Doc. 151, at 10). On September 20, 2017, the arbitrator issued his decision, finding that if the amount of hours billed was reasonable, Travelers would owe Bobrick $4,181,681.05 – the difference between the amount Travelers should have paid Bobrick and the amount it actually paid. (Doc. 152-10, at 2-4). Bobrick filed a petition to confirm the arbitrator's award with the Los Angeles Superior Court, which included the unredacted attorney billing rates that were the subject of the parties' confidentiality agreement. (Doc. 146, at 7; Doc. 151, at 11).

On October 25, 2017, Travelers commenced this action to recover its share of the settlement amount by filing a complaint in the United States District Court for the Central District of California. (Doc. 1, at 1). On January 11, 2018, this case was transferred to the District Court for the Middle District of Pennsylvania. (Doc. 27). Travelers served interrogatories, requests for production of documents, and requests for admissions on Bobrick, seeking information about the settlement of the Underlying Action and the nature, type, and amount of damages Bobrick sought from Scranton Products as part of its counterclaim, including information related to its claims for counsel fees. (Doc. 146, at 5). Bobrick objected to each request and sought an order from the judge handling the Underlying Action that would bar production of the information Travelers sought, which the judge declined to issue. (Doc. 146, at 6). On November 2, 2020, the Court referred the case to the undersigned Chief Magistrate Judge to handle discovery disputes. (Doc. 94).

During a telephonic hearing held on April 1, 2021, counsel for Travelers allegedly alluded to testimony by Hittinger in the prior arbitration reflecting an analysis of Bobrick's prospects for success on its attorney's fees claim. (Doc. 152-14, at 20, 31-32). On April 13, 2021, the Court ordered Bobrick to produce materials from the Underlying Action that are not labeled "Attorneys' Eyes Only," or "AEO," and found that settlement negotiations from

the Underlying Action are not precluded under Federal Rule of Evidence 4085 as long as they are used for the purpose of determining whether and how funds were apportioned. (Doc. 134, at 20; Doc. 135, at 1). On April 26, 2021, the parties again appeared before the undersigned in a discovery teleconference, requesting that the undersigned consider the issue of whether the prior testimony is protected by the confidentiality agreement and whether Bobrick waived any such protection. (Doc. 142, at 7). The undersigned allowed Bobrick to file the motion to strike the disputed information, warning that the parties should not include references to the disputed testimony in later pleadings or "any characterization of it, at this point in time, until I've decided whether or not it should be considered, at all, in this case, given the Confidentiality and the Protective Order in the last one." (Doc. 142, at 9-10).

On April 30, 2021, Bobrick filed the first motion to strike information about confidential arbitration testimony ("First Motion to Strike"), requesting an Order "striking from the transcript of the April 1, 2021[,] discovery hearing [Travelers's] purported summary and characterization of confidential arbitration testimony" and prohibiting Travelers "from citing, quoting, summarizing, or characterizing information designated confidential in that arbitration." (Doc. 144, at 1). On May 14, 2021, Travelers filed the motion for an order finding that Travelers can use prior arbitration testimony by Bobrick's counsel, Hittinger, from a prior arbitration held on August 22, 2017. (Doc. 147, at 1). Bobrick requests that the Court bar Travelers from using Hittinger's prior testimony, arguing that the testimony is insulated from use under the parties' confidentiality agreement in the fee arbitration. (Doc. 151, at 7-8). Travelers disagrees, arguing that Hittinger's testimony is not "protected material," as defined in the confidentiality agreement. (Doc. 151, at 8). On May 27, 2021, Bobrick filed the second motion to strike information about confidential arbitration testimony ("Second Motion to Strike"), requesting that the Court strike Travelers's purported summary and/or

characterization of confidential arbitration testimony from specific filings in the record. (Doc. 158).

The motions are ripe fully briefed and ripe for disposition. (Doc. 145; Doc. 150; Doc. 151; Doc. 156; Doc. 157; Doc. 159; Doc. 160; Doc. 161; Doc. 162).

II.     **LEGAL STANDARD**

Rule 37(b)(2)(A) provides that "on motion or on its own, the court may issue any just orders, including those authorized by Rule 37 (b)(2)(A)(ii)-(vi i), if a party or its attorney … fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Rule 37(b)(2)(A) provides, in pertinent part, that the court may enter an order: "(iii) striking pleadings in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(iii). The Third Circuit has, on several occasions, manifested a distinct aversion to the exclusion of important testimony absent evidence of extreme neglect or bad faith on the part of the proponent of the testimony. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994), *cert. denied*, 513 U.S. 1190 (1995). "The exclusion of critical evidence is an 'extreme' sanction not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order." *Thompson v. Bridon-Am. Corp.*, No. 3:17-CV-40, 2018 WL 4616244, at *2 (M.D. Pa. Sept. 26, 2018) (citations omitted). Rulings regarding the imposition of discovery sanctions under Rule 37 are "committed to the sound discretion of the district court," and will only be disturbed upon a showing of abuse of discretion. *Perez v. Great Wolf Lodge of the Poconos*, No. 3:12-CV-1322, 2015 WL 4066633, at *3 (M.D. Pa. June 15, 2015), *report and recommendation adopted as modified*, 2015 WL 4066889 (M.D. Pa. July 2, 2015) (citing *DiGregorio v. First Rediscount Corp.*, 506 F.2d 781, 788 (3d Cir. 1974). "This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters." *Perez*, 2015 WL 4066633, at *3 (citing *Halsey v. Pfeiffer*, No. 09-1138, 2010 WL 3735702, at *1 (D.N.J. Sept. 17, 2010).

III.     **DISCUSSION**

On April 30, 2021, Bobrick filed the First Motion to Strike pursuant to Federal Rule of Civil Procedure 37(b)(2), requesting an order: "(i) striking from the April 1, 2021 transcript page 20, lines 3-7 and 8-15 and page 31 lines 23-24 and (ii) prohibiting Travelers and its in-house and outside legal counsel, including Mark Peterson and Francis Deasey and their law firms, from citing, quoting, summarizing, or characterizing information designated confidential under the arbitration confidentiality agreement and order." (Doc. 145, at 4). In response, on May 14, 2021, Travelers filed a motion for an order finding that Travelers can use the prior arbitration testimony given by Hittinger on August 22, 2017, on the topic of whether Bobrick's attorney fee claim against Scranton Products in the Underlying Action was likely to succeed. (Doc. 147, at 1). On May 27, 2021, Bobrick filed the Second Motion to Strike requesting that the Court strike Travelers' purported summary and/or characterization of confidential arbitration testimony from: (1) Travelers' motion to use prior arbitration testimony (Doc. 147); (2) Travelers' brief in support thereof (Doc. 151); (3) Travelers' affidavit in support thereof (Doc. 152), (4) Travelers' proposed Order (Doc. 147-1); and (5) Travelers' brief in opposition to Bobrick's First Motion to Strike (Doc. 150). (Doc. 158, at 1-2). Bobrick also requests sanctions and attorneys' fees against Travelers. (Doc. 158, at 2).

The Court begins with the relevant language of the parties' stipulated protective order. *See Wright v. City of Phila.*, No. 16-5020, 2017 WL 5571061, at *1 (E.D. Pa. Nov. 20, 2017) (looking to the parties' confidentiality agreement for the "standard of review and allocation of burden" in considering a motion to strike confidentiality designations); *Avaya, Inc. v. CISCO Sys., Inc.*, No. 10-5881, 2011 WL 13143138, at *1 (D.N.J. Nov. 4, 2011) (beginning the analysis of a motion to strike confidentiality designations with a review of the applicable

portion of the parties' stipulated confidentiality order). Three sections of the Confidentiality Agreement primarily apply to the instant disputes: Sections 1.5, 2.5, and 2.6.

> 1.5 <u>DEFINITIONS</u>. <u>Protected Material</u>: any documents or information that are "Confidential" pursuant to the terms of this Confidentiality Agreement. The Parties agree that, without limitation, the following are "Confidential," irrespective of whether they are marked as such: (a) Travelers' list or excepts of Travelers' list of panel attorneys and their hourly billing rates, (b) attorney fee invoices, and (c) other documents which reflect rates which Travelers pays to other attorneys, which are otherwise not in the public record.
>
> 2.5 The Parties agree that the production of Protected Material will not constitute a waiver of any privilege, confidentiality or any other protection that otherwise attaches to that Protected Material, and that they will not advance any such argument in this Matter or any other dispute, action, arbitration or negotiation. To ensure that the privacy rights of insureds in other matters are protected, Travelers shall produce to Bobrick copies of invoices for legal services provided to those insureds with the descriptions of the legal services redacted. This adequately protects the privacy rights of those other insureds.
>
> 2.6 Disclosure of Protected Material. Unless otherwise ordered by the arbitrator or a Court, or permitted in writing by the Designating Party, a Receiving Party may disclose any Protected Material or any copies, abstracts, compilations, or summaries of Protected Material, as well as any briefs, fillings, memoranda, correspondence or any other documents that contain or reference Protected Material only to:
>
>> (a) the Receiving Party's outside counsel of record in this Matter, as well as employees of said counsel to whom it is reasonably necessary to disclosure the information for the Matter;
>> (b) the in-house counsel, officers, directors, agents, and employees of the Receiving Party to whom disclosure is reasonably necessary for this Matter;
>> (c) the consultants and experts of the Receiving Party to whom disclosure is reasonably necessary for this matter and who have signed a document stating "I agree to be bound by the "Confidentiality Agreement;"
>> (d) any arbitrator, mediator or Court presiding over the Matter and their respective personnel[.]
>
> (Doc. 145-1, at 2-18).

Bobrick argues that Travelers knowingly violated two provisions of the Arbitration Protective Order because "[d]uring the Court's April 1, 2021[,] telephonic hearing on Travelers' motion to compel, Travelers' counsel Francis Deasey purported to summarize on

the public record and characterize testimony from an unidentified litigation, in support of Travelers' motion to compel in this case." (Doc. 145, at 1-2) (citing Doc. 132, at 20, 31). On April 23, 2021, Travelers' allegedly told Bobrick that Deasey reviewed the confidential arbitration transcript before the telephonic hearing and that the testimony he referred to during the hearing was from that prior arbitration between Travelers and Bobrick regarding attorney hourly rates in the Underlying Action. (Doc. 145, at 2). In response, Travelers argues that Bobrick cannot prevent it from using Hittinger's testimony because "it was not 'Protected Material' under the parties' Confidentiality Agreement and, even if it was, [] Bobrick materially breached that agreement and cannot now use it to shield the Hittinger testimony." (Doc. 151, at 14). Bobrick asserts that the purportedly protected information has been marked as confidential under an agreement (the "Arbitration Protective Order") in the prior arbitration between Bobrick and Travelers, and that this designation was never withdrawn or challenged by any party. (Doc. 145, at 2; Doc. 156, at 6).

    A. "Confidential" Designation

Travelers argues that the arbitration hearing transcript is not confidential because the Confidentiality Agreement applied to specified "Protected Material," not to Hittinger's testimony from the prior arbitration. (Doc. 151, at 8). Bobrick argues that the arbitration hearing transcript has been designated "Confidential" by counsel for Travelers on multiple occasions, and that such designation was never withdrawn or challenged by any party. (Doc. 156, at 6) (citing 156-1, at 3-5).

According to the Confidentiality Agreement, Protected Material must be designated as such by stamping the word "Confidential-Subject to Confidentiality Agreement," or substantially similar language, on each page that contains protected material. (Doc. 145-1, at 3). However, certain documents or information are "Confidential" irrespective of whether

they are marked as such, including Travelers' attorney's hourly billing rates. (Doc. 145-1, at 3). Once designated as "Confidential" or "Protected Material," the information is subject to protection from disclosure under the Confidentiality Agreement. (Doc. 145-1, at 3). Any quotations or summarization of Protected Material in any brief or other filing must also contain the indication "Confidential-Subject to Confidentiality Agreement" on the face page of that brief or other filing, and the Protected Material "may not be used, reviewed or referenced in any other dispute, action, arbitration or negotiation." (Doc. 145-1, at 3-4). Any time a party must disclose information that has been designated Confidential, that party must provide immediate written notice to the producing party and either resist or limit disclosure or seek an appropriate protective order. (Doc. 145-1, at 5). The party receiving the "Protected Material" is required to maintain it "in strict confidence," and the parties' obligations under the Confidentiality Agreement survive the termination of the Underlying Action. (Doc. 145-1, at 4).

During the prior arbitration testimony, counsel for Travelers, Peterson, urged for confirmation that the arbitration transcript was confidential:

- **Mr. Peterson**: "And I don't know if we did this on or off the record, but if Your Honor would order that the transcript be considered confidential."
  **Judge Lichtman**: "The transcript is confidential. . ."

- **Mr. Peterson**: "Ok. And the transcript will be marked confidential on its face, correct?" **Judge Lichtman**: "It will be marked confidential on its face, yes."

- **Mr. Peterson**: "My understanding is that we have agreed that the transcript will be marked confidential." **Judge Lichtman**: "Correct." **Mr. Peterson**: "And I ask that we affirm that it is – that further testimony by Mr. Hittinger on the topic that is sensitive will be deemed confidential and protected material under the parties' confidentiality agreement which is Exhibit 13F." **Judge Lichtman**: "That's fine."

(Doc. 156-1, at 2-5).

Moreover, the cover page of the arbitration testimony transcript and each subsequent page display a "Confidential" indication. (Doc. 152-7, at 2-5; Doc. 156-1, at 2-5). Further, designating the arbitration testimony as confidential was appropriate given the necessary disclosure of Travelers' attorneys' hourly billing rates and the parties are able to request "Protected Material" designation at their discretion. (Doc. 145-1, at 3).

Hittinger's testimony from the arbitration dispute is "Protected Material" under the Confidentiality Agreement and may not be used, reviewed, or referenced in any other dispute, including the current litigation, whether or not the parties marked it as such. (Doc. 145-1, at 3). The Confidentiality Agreement specifically provides that "[t]he Parties agree that, without limitation, the following are 'Confidential,' irrespective of whether they are marked as such: (a) Travelers' list or excepts of Travelers' list of panel attorneys and their hourly billing rates. . ." (Doc. 145-1, at 3). Moreover, the parties agreed that the Arbitrator's Award would be treated as Confidential and require the appropriate redactions upon publication. (Doc. 160-1, at 8). The parties have stipulated to the Confidentiality Agreement entered between Bobrick and Travelers and the Court shall enforce the terms of that agreement, not fashion a new one. *See Avaya, Inc.*, 2011 WL 13143138, at *1 ("The language of the parties' [stipulated confidentiality order] is clear. The parties, represented by learned counsel, negotiated the terms of that document and those are the terms that the Court will apply here."). Accordingly, the arbitration testimony transcript is designated as "Protected Material" under the Confidentiality Agreement because the parties specifically requested this designation during the arbitration and the phrase "Confidential" was placed on each page of the transcript. (Doc. 156-1, at 2-5; Doc. 160-1, at 9).

Additionally, the Confidentiality Agreement identifies which individuals a receiving party of Protected Material can distribute the materials to, alone with signed recognition

stating: "I agree to be bound by the Confidentiality Agreement." (Doc. 145-1, at 4-5). Because Deasey was not counsel for Travelers in the Underlying Matter and there is no evidence that the parties agreed to allow him access to the material, Deasey's alluding to and summarization of Hittinger's testimony is improper. Therefore, Hittinger's testimony in the prior arbitration is protected under the Confidentiality Agreement and may not be copied, summarized, or alluded to in any manner.

### B. WAIVER OF CONFIDENTIALITY PROTECTIONS

Travelers next argues that Bobrick is precluded from now demanding Travelers comply with the Confidentiality Agreement because it "repeatedly and materially breached" the Confidentiality Agreement. (Doc. 151, at 17). Travelers argues Bobrick also materially breached the Confidentiality Agreement when it provided details of the prior arbitration in Bobrick's brief in opposition to Travelers' motion to compel production of documents from Bobrick. (Doc. 151, at 19; Doc. 109). In response, Bobrick argues that publication of the Arbitrator's Award was not a breach because the report was not designated as "Confidential," and that Travelers initially breached the Confidentiality Agreement by allowing Deasey, who was not Travelers' counsel in the prior arbitration, to review and allude to testimony from that prior arbitration. (Doc. 156, at 9).

"In general, to determine whether a contract was formed under Pennsylvania law, a court must look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 533 (3d Cir. 2009). Courts have found mutual promises to arbitrate and mutual agreements of confidentiality to be sufficient consideration in forming a contract. *See e.g., Ticknor v. Choice Hotels Int'l, Inc.,* 265 F.3d 931, 944 (9th Cir. 2001) (finding mutual promises

to arbitrate constituted an enforceable contract and that each promise provides consideration for the other); *O'Neil v. Hilton Head Hosp.,* 115 F.3d 272, 275 (4th Cir. 1997) ("A mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement."); *Joao v. Cenuco, Inc.,* 376 F.Supp.2d 380, 384 n.4 (S.D.N.Y. 2005) (noting that a confidentiality agreement that "prohibit[ed] either party from disclosing information discussed" was supported by consideration because mutual promises constitute valid consideration).

Here, both Travelers and Bobrick manifested an intention to be bound by the Confidentiality Agreement and Agreement to Arbitrate. (Doc. 145-1, at 2; Doc. 156-1, at 32). Counsel for Travelers and Bobrick signed the agreements on behalf of the parties, indicating their intent to be bound by the agreement. (Doc. 145-1, at 6; Doc. 156-1, at 35). Further, both parties promised to participate in arbitration and explicitly agreed to keep their arbitration discussions confidential.[1] (Doc. 156-1, at 2-5, 34). These terms provide a benefit to both Travelers and Bobrick and may be enforced by either party against the other. *See Joao*, 376 F.Supp.2d at 384 n.4 (confidentiality agreement that "prohibit[ed] either party from disclosing information discussed" was supported by consideration because mutual promises constitute valid consideration).

Travelers argues that Bobrick has waived the right to enforce the Confidentiality Agreement when he filed of the Arbitrator's Award, which includes the hourly billing rates that are designated as "Protected Material" is a material breach of the Confidentiality Agreement. (Doc. 160, at 9); *see* (Doc. 156-1, at 17) (redacted). Travelers asserts that the

---

[1] The Agreement to Arbitrate provides that the Confidentiality Agreement "remains binding on [the parties] and applies to the arbitration under this Agreement, including with respect to the confidentiality of disclosures and discovery activity in the arbitration provided for here." (Doc. 156-1, at 34).

Arbitrator's Award plainly contains "Protected Material," and that the arbitrator's failure to designate the Award as "Confidential" does not change the protected status. (Doc. 160, at 10). The Agreement to Arbitrate provides that the Confidentiality Agreement "remains binding on [the parties] and applies to the arbitration under this Agreement, including with respect to the confidentiality of disclosures and discovery activity in the arbitration provided for here." (Doc. 156-1, at 34). Conversely, Bobrick asserts that Travelers failed to designate the Arbitration Award as confidential, failed to object to its filing on the public docket, and that the Arbitration Award became a judicial record subject to the preemptive right of public access once it was filed with the Los Angeles Superior Court. (Doc. 156, at 9-13).

Both parties in this dispute have breached the Confidentiality Agreement by unlawful disclosure in witness testimony and by publicly filing protected material. As noted, Hittinger's testimony about such information is protected by the Agreement, irrespective of whether it was marked as such, and cannot be summarized or alluded in briefs, memoranda, or pleadings without proper redaction. (Doc. 145-1, at 3). Again, the Confidentiality Agreement provides that "[t]he Parties agree that, without limitation, the following are 'Confidential,' irrespective of whether they are marked as such: (a) Travelers' list or excepts of Travelers' list of panel attorneys and their hourly billing rates. . ." (Doc. 145-1, at 3). The parties expressly agreed that the Arbitration Award would be designated as "Confidential," bringing it under the protection of the Confidentiality Agreement. (Doc. 160-1, at 8). Although the Confidentiality Agreement does provide that the parties may disclose "Protected Material" to witnesses in the Underlying Action when disclosure is reasonably necessary, such disclosure must be accompanied with a signed document stating that the individual acknowledges his duties under the Confidentiality Agreement. (Doc. 145-1, at 4-5). Reviewing Hittinger's prior arbitration testimony by persons who are expressly granted access to such confidential

material is not prohibited and does not breach the Confidentiality Agreement. (Doc. 145-1, at 4). However, summarizing or alluding to Protected Material in any subsequent motions, briefs, memoranda, or other filings is prohibited. (Doc. 145-1, at 5).

Nonetheless, the Confidentiality Agreement does not identify a procedure to remove "Confidential" or "Protected Material" designations, nor does it allude to such a procedure that would allow the parties to circulate any copies, abstracts, compilations, or summaries of Protected Material. (Doc. 145-1, at 3). Despite signing the Confidentiality Agreement, Bobrick publicly filed the Arbitrator's Award and Travelers filed multiple pleadings that reference Hittinger's prior arbitration testimony, both without affirmatively designating the documents by "stamping the word 'Confidential – Subject to Confidentiality Agreement,'" or substantially similar language, on the face page of the brief or other filing. (Doc. 145-1, at 3). Publication of the Arbitrator's Award, which contained protected information regarding counsel for Travelers' confidential hourly billing fees, without proper redaction, violated the Confidentiality Agreement. (Doc. 156-1, at 13-25). However, publishing the Arbitrator's Award for confirmation of the award in the Los Angeles Superior Court did not remove the parties' obligations to prevent publication of "Protected Material" by redacting any and all Protected Material within the filing. (Doc. 145-1, at 3).

Hittinger's prior arbitration testimony is protected under the Confidentiality Agreement and, thus, may not be copied, summarized, or alluded to in any manner. The parties have never waived their right to enforce the Confidentiality Agreement and the Confidentiality Agreement does not contain a clause stating that the parties may waive their right to enforce if they violate the Agreement. Therefore, insofar as certain filings contain material related to prior arbitration testimony by Hittinger, that material shall be stricken and the parties shall not summarize or allude to the testimony in future filings or discussions.

*Perez,* 2015 WL 4066633, at *3 ("Rulings regarding the proper scope of discovery, and discovery sanctions, are matters consigned to the court's discretion and judgment.").

Accordingly, Bobrick's First Motion to Strick from the transcript of the April 1, 2021, discovery hearing Travelers' purported summary and characterization of confidential arbitration testimony is granted. (Doc. 144). Additionally, Bobrick's Second Motion to Strike the purported summary and/or characterization of confidential arbitration testimony from the filings listed in that motion is granted. (Doc. 158). Travelers' motion for an order finding that it can use Hittinger's prior arbitration testimony is denied. (Doc. 147).

The Court concludes that this is the appropriate course of action here because evidence related to Hittinger's testimony in the prior arbitration is not necessary to the resolution of this case. Because such extraneous evidence serves only to obfuscate the real issues and unnecessarily complicate proceedings going forward, the Court will exercise its discretion and strike the following material: (1) April 1, 2021, transcript page 20, lines 3-7 and 8-15, and page 31, lines 23-24 (Doc. 145, at 4); (2) Travelers' motion, page 1, lines 6-8, and proposed order, page 2, lines 2-4 (Doc. 147, at 1; Doc. 147-1, at 2); (3) Travelers' brief in opposition, page 1, lines 6-9 (Doc. 150, at 1); (4) Travelers' memorandum of law, page 4, lines 17-20, page 6, lines 18-19, page 7, line 20, and page 8, lines 2 and 11-12 (Doc. 151, at 4, 6-8); (5) Travelers' affidavit in support, page 10, paragraph 10 (Doc. 7, at ¶ 10); and (6) Travelers' brief in opposition, page 1, lines 15-16, and page 3, lines 15-16. (Doc. 161, at 1, 3). The parties are precluded from citing, quoting, summarizing, or characterizing information designated confidential in that arbitration, including Hittinger's prior arbitration testimony.

    C.  R<small>EQUEST FOR</small> S<small>ANCTIONS</small>

In Bobrick's brief in opposition to Travelers' motion for an order to use Hittinger's prior arbitration testimony, Bobrick requests that the Court impose sanctions on Travelers

under 28 U.S.C. § 1927 for acting in "bad faith" and filing its "frivolous" motion. (Doc. 156, at 16-17). In response, Travelers asserts that Bobrick's request for sanctions is "purely tactical" and argues that the Court should impose sanctions on Bobrick "for advancing these frivolous arguments." (Doc. 160, at 17).

Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." To violate § 1927, an attorney must be found to have: "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Schaefer Salt Recovery, Inc.,* 542 F.3d 90, 101 (3d Cir. 2008); *LaSalle Nat'l Bank v. First Connecticut Holding Grp., L.L.C. XXIII,* 287 F.3d 279, 288 (3d Cir. 2002) (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 278 F.3d 175, 188 (3d Cir. 2002)). When addressing this issue, the Third Circuit has therefore held that "sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Grider v. Keystone Health Plan Cent., Inc.,* 580 F.3d 119, 142 (3d Cir. 2009) (quoting *LaSalle Nat'l Bank,* 287 F.3d at 289).

A party seeking an award of attorney's fees under § 1927 bears a heavy burden. "Courts should exercise [discretion to award § 1927 sanctions] only in instances of a serious and studied disregard for the orderly process of justice." *Ford v. Temple Hosp.,* 790 F.2d 342, 347 (3d Cir. 1986) (citations omitted). The attorney's conduct "must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation."

*Baker Indus. Inc. v. Cerberus, Ltd.,* 764 F.2d 204, 208 (3d Cir. 1985) (citation omitted). "A district court's finding of bad faith or the absence of bad faith in a particular case is a factual determination and may be reversed only if it is clearly erroneous." *Ford,* 790 F.2d at 347 (citing *Baker,* 764 F.2d at 210).

There is no evidence that counsel for either party filed the motions for the purpose of intentionally or unnecessarily delaying the proceedings. Bobrick argues that Travelers intentionally made false and misleading statements to the Court by failing to inform the Court that counsel for Travelers designated the prior arbitration testimony as confidential at three points during the arbitration hearing. (Doc. 156, at 17). Alternatively, Bobrick argues that Travelers failed to inform the Court that it never objected to or moved to have the prior arbitration testimony placed under seal. (Doc. 156, at 17). Travelers asserts the parties expressly stipulated that the arbitration testimony is confidential during the prior arbitration, which was endorsed by the arbitrator. (Doc. 160, at 16). Additionally, Travelers explains that it asked that the Arbitrator's Award be designated confidential, that Bobrick concurred, and that the arbitrator accepted the agreement. (Doc. 160, at 17); *see* (Doc. 156-1, at 2-5).

Following a review of the parties' motions, the Court cannot conclude that the First Motion to Strike, the motion for an order to use prior arbitration testimony, or the Section Motion to Strike were filed for an improper purpose. *See LaSalle Nat'l Bank*, 287 F.3d at 288. Therefore, because "[a] finding of willful bad faith on the part of the offending lawyer is a prerequisite ... for imposing sanctions under 28 U.S.C. § 1927," the Court cannot find that sanctions against counsel for Bobrick and/or Travelers are appropriate either under this statute or the Court's inherent power. *In re Prudential Ins.*, 278 F.3d at 188 (quoting *Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir. 1991)); *see Avco Corp. v. Turn and Bank Holdings, Inc.*,

No. 4:12-CV-1313, 2017 WL 2224915, at *19 (M.D. Pa. May 22, 2017) (denying request for sanctions where there is no evidence of incomplete or misleading citations of Court Orders and transcripts).

Accordingly, any request for sanctions under 28 U.S.C. § 1927 are denied. (Doc. 156, at 16; Doc. 160, at 17).

IV. **CONCLUSION**

Based on the foregoing, and having considered the parties' arguments, the Court finds that the prior arbitration testimony is protected under the parties' Confidentiality Agreement and may not be copied, summarized, or alluded to in any manner. (Doc. 145-1, at 2-18). Therefore, Bobrick's First and Second Motions to Strike any summary or characterization of prior arbitration testimony is granted. (Doc. 144; Doc. 158). Travelers' motion for an order finding that it can use the prior arbitration testimony of Hittinger is denied. (Doc. 147). Lastly, any request made by the parties for sanctions under 28 U.S.C. § 1927 is denied. (Doc. 156, at 16; Doc. 160, at 17).

An appropriate Order follows.

Dated: December 23, 2021              *s/ Karoline Mehalchick*
                                      **KAROLINE MEHALCHICK**
                                      **Chief United States Magistrate Judge**