**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,** | : | **No. 3:18-CV-94** |
| | : | **(Saporito, J.)** |
| **Plaintiff** | : | **(Caraballo, M.J.)** |
| **v.** | : | |
| **BOBRICK WASHROOM EQUIPMENT, INC.,** | : | |
| **Defendant** | : | |

**MEMORANDUM**

## I. Introduction

This action concerns a dispute over the allocation of the counterclaim settlement proceeds from an underlying litigation, *Scranton Products, Inc. v. Bobrick Washroom Equipment, Inc.*, No. 3:14-cv-853 (M.D. Pa.). Here, plaintiff Travelers Property Casualty Company of America seeks to recover from that settlement the defense costs and fees it expended on its insured, defendant Bobrick Washroom Equipment, Inc., in the underlying action. Doc. 9.

This matter was referred to the undersigned, pursuant to Title 28, United States Code, Section 636(b)(1)(A), to resolve a motion filed by

Travelers to compel the production of documents appearing on Bobrick's privilege log. Doc. 309. The parties dispute whether Bobrick properly withheld as privileged notes and talking points prepared by Bobrick CEO Mark Louchheim, reportedly in conjunction with counsel, for purposes of settlement negotiations with Scranton Products (a business unit of Compression Polymer Group) during the underlying litigation. Docs. 315–16. For the reasons set forth below, the motion to compel will be granted in part and denied in part.

## II. Background

The Court writes for the parties, who are well familiar with the facts and procedural history of this action and the underlying litigation. On April 17, 2026, Bobrick produced a privileged log that referenced notes authored by Louchheim at entry numbers 1, 23, 25, 30–31, 50–53, 56–58, and 60. Doc. 304-1. The privilege log generally described the notes as ones prepared "for counsel review" in connection with various settlement negotiations in the underlying action. *Id.* Although several are undated, the other entries reference negotiations spanning from September 2016 through March 2020. *Id.* Those privilege log entries are the subject of the instant motion.

The dispute arose following Louchheim's March 20, 2026, deposition, during which he testified that he maintained a hardcopy file containing materials related to the settlement of the underlying action. Doc. 316-1 at 187–92. Among those materials were notes specific to a settlement negotiation with Scranton Products that occurred on March 1, 2017. *Id.* Following the deposition, Travelers notified the Court of the parties' percolating dispute over whether Louchheim's notes were protected by the attorney-client and work product privileges. Doc. 262. The Court subsequently ordered Bobrick to produce a privilege log specific to Louchheim's file, by April 17, 2026. Doc. 269.

Following production of the privilege log, Travelers resubmitted the dispute to the Court's attention. Doc. 304. The Court held a discovery conference on July 17, 2026, construed Travelers' supplemental letter (Doc. 309) as a motion to compel production of the documents withheld from Louchheim's file, directed the parties to submit briefs accordingly, and ordered Bobrick to provide the challenged entries from the privilege log to the Court for *in camera* review. Doc. 313. The parties complied and, on September 18, 2026, the Court held an *in camera* hearing to elicit testimony from Louchheim

concerning the challenged documents. The motion to compel thus is ripe for adjudication.

## III. Discussion

### A. Legal Standards

"The conduct of discovery is a matter for the discretion of the district court and its decisions will be disturbed only upon a showing of an abuse of this discretion." *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987) (citing *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983)). That "broad discretion to manage discovery," *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995), extends to discovery dispute rulings entered by United States Magistrate Judges:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. *See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.*, 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter ..., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing *Scott Paper Co. v. United States*, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." *Kresefky v. Panasonic Commc'ns and Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996); *see also Hasbrouck v. BankAmerica Hous. Servs.*, 190 F.R.D. 42,

> 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); *EEOC v. Mr. Gold, Inc.*, 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

*Halsey v. Pfeiffer*, 2010 WL 3735702, at *1 (D.N.J. 2010).

In exercising that discretion, the Court is guided by the principles set forth in Federal Rule of Civil Procedure 26(b), which permits discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). That liberal discovery policy recognizes that the "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Thus, discovery is generally permitted of any items that are relevant or may lead to the discovery of relevant information. *Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3d Cir. 1982).

"When the Court is presented with a motion to compel discovery, '[t]he burden is on the objecting party to demonstrate in specific terms why a discovery request is improper. The party objecting to discovery

must show that the requested materials do not fall within the broad scope of relevance or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.' " *Mazer v. Frederick Mut. Ins. Co.*, 2021 WL 850984, at *1 (M.D. Pa. 2021) (citing *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 227 (M.D. Pa. 2014)).

As this is a diversity action involving state claims, Pennsylvania law governs whether the attorney-client privilege applies to the challenged documents. *See* Fed. R. Evid. 501; *Montgomery County v. MicroVote Corp.*, 175 F.3d 296, 301 (3d Cir. 1999). Under Pennsylvania law, the attorney-client privilege protects "confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011); *see also* 42 Pa. Cons. Stat. Ann. § 5928 ("In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.").

The privilege thus "applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between [the client and the attorney or his agents] (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Teleglobe Communications Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting the Restatement (Third) of the Law Governing Lawyers § 68 (2000)). The attorney-client privilege facilitates "[f]ull and frank communication between attorneys and their clients." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007). The privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn v. United States*, 449 U.S. 383, 389 (1981).

Although the privilege protects from disclosure attorney-client communications, it does not extend to the underlying facts conveyed in those communications. *Id.* at 385. Thus, while recognizing its value, "[b]ecause the attorney-client privilege has this effect of withholding relevant information from fact-finders, federal courts must apply it only where necessary to achieve its purpose." *Wachtel*, 482 F.3d at 231. Accordingly, "because the purpose of the privilege is to promote the

dissemination of sound legal advice, the privilege will extend only to advice which is legal in nature. Where a lawyer provides non-legal business advice, the communication is not privileged." *Id.*

"Federal courts are further required to assess the application of the privilege on a case-by-case basis." *Foy v. Encompass Home and Auto Ins. Co.*, 2023 WL 6609016, at *5 (M.D. Pa. 2023); *see also Wachtel*, 482 F.3d at 230 ("Rule 501 requires the federal courts, in determining the nature and scope of an evidentiary privilege, to engage in the sort of case-by-case analysis that is central to common-law adjudication."). "The burden of proving that the (attorney-client) privilege applies is placed upon the party asserting the privilege." *Matter of Grand Jury Empanelled Feb. 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979) (quoting *United States v. Landof*, 591 F.2d 36, 38 (9th Cir. 1978)).

Relatedly, the work-product doctrine is a principle of federal law governed by Federal Rule of Civil Procedure 26(b)(3). *United Coal v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). Rule 26(b)(3) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial

by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The doctrine thus "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661–62 (3d Cir. 2003) (internal quotations omitted).

"Rule 26(b)(3) establishes two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, 'core' or 'opinion' work product that encompasses the 'mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation' is 'generally afforded near absolute protection from discovery.' Thus, core or opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances." *Id.* at 663 (citations omitted). "Work product prepared in the ordinary course of business is not immune from discovery." *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000).

In comparing the work product doctrine to the attorney-client privilege, the Court of Appeals explained:

> The purpose of the work-product doctrine differs from that of the attorney-client privilege.... [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.

*Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1427–28 (3d Cir. 1991). As with the attorney-client privilege, "[t]he burden of demonstrating that a document is protected as work-product rests with the party asserting the doctrine." *Conoco Inc. v. U.S. Dep't. of Just.*, 687 F.2d 724, 730 (3d Cir. 1982).

### B. Privilege Claims for Louchheim's File

Travelers contends that notes created by Louchheim for purposes of settlement discussions, and only later provided to counsel for review, are not protected by either privilege. Doc. 316. Bobrick, in opposition, avers that the challenged documents contain requests for legal advice, incorporate legal advice, and were prepared in conjunction with counsel,

rendering them privileged both as attorney-client communications, and on work product grounds. Docs. 315; 304-1.

The Court conducted an *in camera* review of the challenged documents reflected in Bobrick's privilege log at entry numbers 1, 23, 25, 30–31, 50–53, 56–58, and 60. Doc. 304-1. On September 18, 2026, the Court also heard *in camera* testimony from Louchheim specific to the circumstances surrounding the creation, purpose, and function of each individual challenged document. Doc. 335. Based on that review and testimony, the Court makes the following findings.

First, the motion to compel production of entry numbers 1, 23, 25, 30–31, 50, 56–58, and 60 is denied. The documents at entry numbers 50 and 56–58 memorialize communications with counsel and reflect counsel's legal advice, thus falling within the heartland of the attorney-client privilege. Entry number 60 is a document prepared by counsel for Louchheim, and thus is protected by both the attorney-client and work product privileges.

The documents at entry numbers 1, 23, 25, and 30–31 were prepared by Louchheim, in part, for purposes of obtaining legal advice from counsel, and reflect legal advice from counsel, thus rendering them

protected by the attorney-client and work product privileges. "Where the transfer is made for the purpose of obtaining legal advice, the purposes of the attorney-client privilege would be defeated unless the privilege is applicable." *Fisher v. United States*, 425 U.S. 391, 404 (1976).

Importantly, none of the documents are pre-existing records that were simply provided to counsel, and thus fall beyond the scope of the privilege, *see id.* at 403-04 , but rather are materials prepared with counsel or for counsel's review in advance of various negotiations in the underlying and then-ongoing litigation with Scranton Products. Thus, disclosure of those documents could give insight into counsels' thought processes and strategy in the underlying action, as they "reflect the mental impressions, opinions, conclusions, and legal theories" of Bobrick's attorneys. *Cendant Corp.*, 343 F.3d at 667; *see also Times of Trenton Publ'g Corp. v. Pub. Util. Serv. Corp.*, 2005 WL 1038956, at *4–6 (D.N.J. 2005) (protecting from disclosure corporate status reports that reflected counsel's legal advice and strategy for settlement negotiations). And although not dispositive, all of the documents are labeled with an iteration of the phrase "Confidential Attorney-Client

Privileged Communication," evincing the drafter's contemporaneous intent.

Moreover, none of these challenged documents were disclosed to non-privileged third parties. Although Travelers contends that Louchheim's notes "are the only known contemporaneously-created documents" concerning settlement negotiation meetings in the underlying action, Doc. 316 at 5, that characterization does not extend to entry numbers 1, 23, 25, and 30–31, as they do not reflect notes taken during those meetings. Indeed, to the extent that the documents reflect issues that Louchheim intended to raise at the meetings, such intentions do not equate to a memorialization of what the participants actually stated. Rather, the attendees present at the settlement negotiations are best positioned to offer testimony about those statements.

Second, the motion to compel production of entry numbers 51 and 53 is granted in part and denied in part. Although entry number 51 contains privileged materials in typewritten form, it also contains Louchheim's handwritten notes taken contemporaneously during a meeting with Dan Lukas of Compression Polymer Group, memorializing

both Lukas's statements to Louchheim, and Louchheim's statements to Lukas. None of those handwritten memorializations constitutes privileged materials. Accordingly, Bobrick shall produce entry number 51 with the handwritten notes memorializing Lukas's statements and Louchheim's statements unredacted.

Similarly, although entry number 53 contains privileged materials in typewritten form, it also contains Louchheim's handwritten notes taken contemporaneously during a meeting with Lukas and Jesse Singh of Compression Polymer Group, memorializing Singh's statements to Louchheim, Louchheim's statements to Singh, and attachments provided to Singh during that meeting. Accordingly, Bobrick shall produce entry number 53 with the handwritten notes memorializing Singh's statements and Louchheim's statements unredacted. Bobrick also shall produce the attachments interspersed with entry number 53 that were provided to Singh. *See Dempsey v. Bucknell Univ.*, 296 F.R.D. 323, 335 (M.D. Pa. 2013) (requiring production of documents disclosed to third party). Those attachments include a copy of the Scranton Products privilege log dated July 1, 2015; various decisions and orders issued by judicial officers in the Middle District of Pennsylvania and

Third Circuit Court of Appeals; an email between Louchheim and counsel dated July 12, 2013, memorializing a phone conversation with Don Wharton of Scranton Products;[1] a letter between opposing counsel in the underlying litigation, dated March 9, 2016; and an article from the Federal Litigator.

Third, the motion to compel production of entry number 52 is granted. That document reflects notes taken by Louchheim contemporaneously during the meeting with Lukas referenced in entry number 51. The notes neither contain communications with counsel, nor reflect attorney work product, and shall be produced in fully unredacted form.

## IV. Conclusion

For the reasons stated above, Travelers' motion to compel will be granted in part and denied in part. Bobrick shall produce the privilege log entries on Doc. 304-1 at number 52 in fully unredacted form, and at numbers 51 and 53 in partially unredacted form, consistent with this

[1] To the extent that Louchheim offered ambivalent testimony about whether this email was provided to Singh, the undersigned finds that Bobrick failed to meet its burden to establish the privileged nature of this document and protect it from disclosure. Moreover, the email itself bears embedded privilege redactions, signifying that the remainder of the document is beyond the scope of the privileged communication.

memorandum. The motion is otherwise denied. An appropriate order shall follow.

Date: September 23, 2026

***s/ Phillip J. Caraballo***
Phillip J. Caraballo
United States Magistrate Judge